UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JERRY VOLAND,

        Plaintiff,

  v.                                         Case No. 1:17-CV-2494-WCG-MPB

LARA MCNEW,
GAY MULLINS,
LORETTA DAWSON,
BRUCE IPPEL, and
BARBARA BRUBAKER

        Defendants.

## DECISION AND ORDER

Plaintiff Jerry Voland filed this *pro se* action under 42 U.S.C. § 1983 while serving a sentence at New Castle Correctional Facility in New Castle, Indiana. He has since been released. Voland alleges that Defendants Lara McNew, Gay Mullins, Loretta Dawson, Bruce Ippel, and Barbara Brubaker, all members of the medical staff at New Castle, were deliberately indifferent to his medical needs while he was in custody in violation of his Eighth Amendment rights. Other defendants were dismissed at the screening stage. The remaining defendants filed a motion for summary judgment on June 6, 2018, asserting that the case should be dismissed because Voland has failed to exhaust his administrative remedies. On August 28, 2018, Defendants filed a motion requesting that the court accept their reply brief in support of the motion for summary judgment as timely. Voland did not oppose that motion, so it will be granted. The motion for summary

judgment is now fully briefed and ready for resolution. For the following reasons, Defendants' motion will be granted and the case dismissed.

## BACKGROUND

Voland claims in his amended complaint that Defendants were deliberately indifferent to his medical needs. He alleges that, approximately seven years ago, he had an operation which placed metal rods in his neck to eliminate numbness and pain. On August 21, 2015, an unknown assailant hit Voland on the back of his neck. Voland claims he felt a bone pop in his neck, causing a shooting pain down his neck, arm, and teeth and aggravating the symptoms he had experienced prior to his surgery. The day following the assault, Voland submitted a health services request seeking treatment for his symptoms. He also complained verbally to staff members, beginning August 26, 2015, about his injuries. Voland maintains that staff disregarded his complaints and his requests for medical attention throughout September and October 2015. He alleges that Nurse McNew never asked about his injuries or evaluated him at his appointments and that Nurse Mullins told him he was old and had arthritis. Voland claims other medical providers failed to provide appropriate medical treatment for his condition.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden of showing that there are no facts to support the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit

evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "Material" means that the factual dispute must be outcome-determinative under the law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation marks omitted).

## ANALYSIS

As an initial matter, Voland requests in a sur-reply to add J. Smith, an executive assistant who reviews inmate grievances, as a defendant in this case. A court may deny leave to amend where there has been undue delay. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Voland provides no reason for waiting until the briefing was completed on Defendants' motion for summary judgment to request to amend his pleadings. This undue delay is a sufficient basis upon which to deny Voland's request.

Turning to Defendants' motion for summary judgment, Defendants maintain that Voland has failed to exhaust his administrative remedies. The Prison Litigation Reform Act of 1995 (PLRA) provides that a prisoner cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford*

*v. Ngo*, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that a prisoner comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). The failure to properly exhaust each step of the process constitutes failure to exhaust available administrative remedies. *Id.* This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The objective of § 1997e(a) is to "permit the prison's administrative process to run its course before litigation begins." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (quoting *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005)); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion," and expects prisoners to adhere to "the specific procedures and deadlines established by the prison's policy." *Dole*, 438 F.3d at 809; *see also Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) (citation omitted).

The Indiana Department of Correction (IDOC) has implemented the IDOC Policy and Administrative Procedure 00-02-301, Offender Grievance Process under which inmates may raise "concerns and complaints relating to their conditions of confinement." ECF No. 49-2 at 1. The grievance process consists of three steps. First, within five business days of the incident prompting the complaint, the inmate must make an informal attempt to resolve a problem by contacting staff to discuss his concerns. If the informal complaint is not resolved by staff within ten working days of the date the inmate first approached the staff person, the offender then submits a Level 1 formal written complaint to the Grievance Specialist. The formal grievance must be submitted on the Level 1 Grievance Form. Once the grievance is filed, the Grievance Specialist logs the grievance in the

OGRE system, assigns the grievance a case number, and provides a receipt to the inmate. An inmate must file a Level 1 formal grievance within twenty business days of the date of the incident giving rise to the grievance. The IDOC must respond to the grievance within fifteen days of its receipt. If the formal written complaint is not resolved in a manner that satisfies the inmate or if the inmate does not receive a response to his grievance within twenty working days, the final step is to appeal the facility's decision by filing a Level 2 Grievance Appeal to the IDOC's Department Offender Grievance Manager within ten working days from the date of his receipt of the grievance response.

From January 1, 2015, through December 1, 2017, Voland filed only one grievance that was in compliance with the IDOC's grievance policy. In that grievance, filed on March 13, 2017, Voland complained that he received inadequate treatment for a rash he believed was caused by scabies. On April 3, 2017, an executive assistant responded to the grievance, noting that medical staff provided him with a variety of creams to address his skin issue and that there was no reason to send him to an outside hospital for treatment at that time. Voland did not appeal that decision.

Although he did not properly file any other grievances during the relevant time period, Voland did submit several grievances that were returned to him because he did not follow the prescribed procedure. For instance, on October 17, 2015, Voland filed a formal grievance with the executive assistant complaining about the medical care he received. In the formal grievance, he indicated that the date of the incident was October 15, 2015, and complained that he submitted informal grievances to staff members without receiving any response. ECF No. 58-2 at 22. Executive Assistant Smith returned the grievance to Voland on October 23, 2015, explaining that Voland had not allowed enough time for an informal resolution. She noted that Voland must allow

5

staff ten working days to provide a response before filing a formal grievance, and provided several examples of the ten-day period. *Id.* at 22, 25. Voland did not file a second formal grievance after the deadlines for the informal process expired.

On November 17, 2015, Voland filed another formal grievance, complaining that he did not receive any response to the multiple informal grievances and requests for medical care he filed regarding his injuries. He listed November 13, 2015 as the date of the incident. *Id.* at 21. Executive Assistant Smith returned the grievance on December 7, 2015, again explaining that there was no indication that Voland tried to resolve the complaint informally and reminded him that he must allow staff ten working days to respond to his informal grievance before submitting a formal grievance. *Id.* at 23. Notwithstanding Voland's failure to follow the IDOC procedure, Smith noted that the Health Services Administrator met with him on November 25, 2015, to discuss his concerns and that he had an x-ray on December 7, 2015. *Id.* at 21. Voland did not file a second formal grievance after the expiration of the informal process deadlines.

Finally, Voland filed a formal grievance on February 15, 2016, claiming that he had not received medical treatment since his assault. He indicated that he filed an informal grievance on February 8, 2016, but did not receive a response. In the grievance, Voland sought the following relief: (1) "charges on the offenders who assaulted and robbed" him, (2) medical treatment to his ongoing injuries, and (3) the return of his stolen property. *Id.* at 20. Executive Assistant Smith once more returned the grievance explaining that it was not completely filled out and that Voland had again not allowed staff ten working days to respond to his informal grievance. *Id.* at 24. She noted that the facility is not responsible for filing charges against the assailants, but Voland could file a

tort claim for his property. *Id.* There is no evidence in the record that Voland filed a subsequent grievance.

Voland contends that the grievance officials interfered with his ability to complete the grievance process because they rejected his grievances based on technicalities. Indeed, the grievance process becomes unavailable to an inmate when "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809 (citations omitted). But Smith's rejection of Voland's grievances for failing to comply with the IDOC process did not make that process unavailable to him. *See Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (noting that in order to properly exhaust, "a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require'" (quoting *Pozo*, 286 F.3d at 1025)). The benefits of exhaustion can only be realized if the prison's grievance system is given a fair opportunity to consider the grievance. *Woodford*, 548 U.S. at 95. Voland has presented no evidence that he attempted to submit a formal grievance once the informal grievance procedure had run its course. Although Voland maintains that he has limited abilities in his memory, focus, and cognitive abilities, the record reflects that he has been able to comply with the IDOC procedure for his other complaints and that the administrative process was generally available to him. Proper exhaustion demands compliance with the institution's critical procedural rules; substantial compliance is not enough. *See id.* at 91. Voland's failure to follow the clear requirements of the IDOC's grievance policy forecloses his claim of deliberate indifference. Accordingly, the court will grant Defendants' motion for summary judgment.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 48) is **GRANTED**. Defendants' motion requesting that the court accept their reply brief (ECF No. 60) is **GRANTED**. The Clerk is directed to detach and docket the reply brief (ECF No. 60-2). The case is dismissed without prejudice for Voland's failure to exhaust his administrative remedies. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   25th   day of January, 2019.

                                          s/ William C. Griesbach
                                          William C. Griesbach, Chief Judge[*]
                                          United States District Court - WIED

---

[*] Of the Eastern District of Wisconsin, sitting by designation.